# *Law Offices of Adam J. Roth*

**112 Madison Avenue, 10th Floor**
**New York, New York 10016**
**(212) 922 – 3741**
**(212) 253 – 4157**
**adamjrothesq@gmail.com**

June 16, 2023

**VIA ECF**
Hon. Brian M. Cogan
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> **Re:    Luis Charriez v. City of New York**
> **Docket No. 23-CV-2283 (BMC)**

Your Honor:

Please accept this letter as Plaintiff's opposition to Defendant's Motion to Dismiss under FRCP Rule 12(b)(6).

We consent to Defendant's request that the Court consider the complete trial testimony from both of Plaintiff's criminal trials, which prove that prosecutor Timothy Gough: (1) deliberately failed to disclose the existence of generous benefits conferred on all five of the People's civilian witnesses; (2) impermissibly bolstered his witnesses by knowingly eliciting false testimony that they had received nothing in exchange for their testimony;[1] and (3) in summation knowingly misrepresented that such witnesses had no motive to be untruthful.[2]

---

[1] *E.g.*, Trial, *People v. Charriez*, Kings Co. Index No. 1778/1997, Dec. 9, 1997, at p. 110, l. 22-25 (Def's Exhibit K):
> Q:    And finally, Miss Bailey, have you received any promises whatsoever for your testimony here today?
> A:    No, sir.

*See also id.* at pp. 129, 190. The prosecution knowingly elicited similar false testimony from three of the five witnesses. As the defense had no evidence to rebut these answers, there was no cross-examination on this point.

[2] Trial, *People v. Charriez*, Kings Co. Index No. 1778/1997, Dec. 9, 1997, at p. 486, l. 8-9; 16-21 (Def's Exhibit N):
> Well, ladies and gentlemen, what motive? Why?

\*\*\*

The significance of such wrongdoing cannot be understated and cannot be resolved on a motion to dismiss. The evidence against Mr. Charriez hung entirely on these witnesses, and it was weak even before the prosecution put its thumb on the scale. The first trial ended with a hung jury, the second with a split verdict. Knowing the fragility of their case, the People therefore hid a trove of impeachment material that Justice Tully—in vacating Mr. Charriez's conviction—twice found could have resulted in his acquittal. Furthermore, it is regrettable but undeniable that Charles Hynes' Brooklyn District Attorney's Office ("KCDA") was repeatedly and deliberately indifferent to the rights of the accused, here and in many other cases.[3]

The Defendant seeks dismissal on the ground that the evidence suppressed in the criminal trial was not material and that the complaint fails to state a claim under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). However, "[w]hen a district court is in effect faced with a motion to dismiss a complaint, [the Second Circuit has]…cautioned that '[b]ecause materiality is a mixed question of law and fact, in the context of a [Rule] 12(b)(6) motion, '[the] complaint may not properly be dismissed…on the ground that the alleged misstatements or omissions are not material." *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016), quoting *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).

Moreover, the Defendant's attorney's bald statement that the KCDA did not have a custom of suppressing *Brady* material is unavailing as counsel "provides no indication that he possesses personal knowledge of his client's affairs to corroborate the representations therein." *Generali*

---

Come on, ladies and gentlemen, you saw each one of those witnesses. Do either one of those—any of those witnesses look malicious enough to do that? Are they the type of monster to set someone up for a homicide? Why?

[3] *See, e.g., infra* note 4. Charles Hynes served as District Attorney for over two decades, from 1990 to 2013. The National Registry of Exonerations (a project of the Newkirk Center for Science & Society at University of California Irvine, the University of Michigan Law School and Michigan State University College of Law), lists numerous exonerations during the "Hynes Era," twenty-five of which prosecutorial conduct was deemed a primary or contributing factor.

*Espana de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.,* 2023 WL 3362839, at \*2 (2d Cir. May 11, 2023). Thus, Defendant's contention that Plaintiff's claims are subject to dismissal because "plaintiff's complaint does not satisfy the rigorous *Connick* standard (*Connick v. Thompson*, 563 U.S. 51, 62-63 (2011)) for deliberate indifference" is not only without merit but inappropriate on a motion to dismiss pursuant to FRCP § 12(b)(6). For these reasons, Defendant's motion must be denied.

### Pleading Standard

The standard of review on Rule 12(b)(6) motion is to determine whether the plaintiff has alleged facts to support a plausible theory of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")). The complaint need not contain detailed factual allegations, but it must provide more than labels and conclusions and a formulaic recitation of the elements of a cause of action. *Id.* For the purpose of the motion, factual assertions of the plaintiff must be accepted as true. *Twombly*, 550 U.S. at 570.

"Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief from the named defendants. The U.S. Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief that is plausible on its face." *Andrews v. All of the Officers in E-N.*, 21-CV-10518 (LTS), 2022 WL 767084, at \*2 (S.D.N.Y. Mar. 14, 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v.*

3

*City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (summarily reversing dismissal of claim for failure to expressly invoke § 1983 when seeking damages for violations of constitutional rights).

In *Johnson*, *supra*, the plaintiffs, who worked as police officers alleged that they were fired by the city's board of aldermen, not for deficient performance, but because they brought to light criminal activities of one of the aldermen. Charging violations of their Fourteenth Amendment due process rights, they sought compensatory relief from the city. Summary judgment was entered against them in the District Court, and affirmed on appeal, for failure to invoke 42 U. S. C. § 1983 in their complaint.

The Supreme Court summarily reversed, holding:

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. See Advisory Committee Report of October 1955, reprinted in 12A C. Wright, A. Miller, M. Kane, R. Marcus, and A. Steinman, Federal Practice and Procedure, p. 644 (2014 ed.) (Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement"); 5 C. Wright & A. Miller, §1215, p. 172 (3d ed. 2002) (Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities"). In particular, no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke §1983 expressly in order to state a claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U. S. 163, 164 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability"); *Swierkiewicz v. Sorema N. A.*, 534 U. S. 506, 512 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2)").

As Judge Bloch held in *Collins v. City of New York*, 923 F. Supp. 2d 462, 478 (E.D.N.Y. 2013), Plaintiff's "allegations regarding Hynes' response—or lack thereof—to misconduct by Vecchione and *other assistants* make plausible his theory that Hynes was so deliberately indifferent to the underhanded tactics that his subordinates employed so as to effectively encourage them to do so" (emphasis added). Indeed, this same Michael Vecchione, then a ranking KCDA prosecutor, himself signed several of the checks making secret payment to the witnesses Timothy Gough proffered against Mr. Charriez at trial.

4

Here, Timothy Gough — at times a direct subordinate of Michael Vecchione — failed to disclose these massive payoffs and brazenly elicited testimony that his witnesses had received no benefit for their testimony, arguing in effect his witnesses were just good citizens performing their civic duty taking the stand against Mr. Charriez. Nothing could have been further from the truth. While the KCDA hid the existence of any *Brady/Giglio* material in this and other well-publicized cases, it simultaneously promoted Timothy Gough first to the prestigious homicide bureau and then made him its chief—a powerful and lucrative post he held until abruptly leaving the KCDA in 2021. Here, as in shockingly similar cases cited by Plaintiff, i.e., *Jabbar Collins, David Ranta, Jonathan Fleming* and others such as *William Rodriguez*,[4] the KCDA denied for years that any such *Brady/Giglio* material existed, keeping Mr. Charriez and these other men wrongfully jailed until Charles Hynes was at last thrown from office by the voters of Kings County and the truth gradually became no longer deniable.

Where a "Complaint sufficiently puts defendant[] on notice of the claims…and the relevant factual allegations concerning them," it "comfortably satisfies the notice pleading required of Rule 8, Fed. R. Civ. P." *Qingdao Tangbo Garments Co., Ltd. v. PRG Nouveau, LLC*, 17-CV-6992 (PKC), 2020 WL 1435218, at *4 (S.D.N.Y. Mar. 24, 2020); *see Johnson v. City of Shelby*, 135 S. Ct. at 347, *supra* ("Having informed [defendant] of the factual basis for their complaint, [plaintiffs] were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.").

---

[4] In addition to those cases in which the KCDA was forced by litigation to account for itself, the KCDA has also grudgingly confessed certain of its failures by overturning wrongful convictions under the auspices of its so-called "Conviction Review Unit," now styled the "Post-Conviction Justice Bureau," which of late has done little reviewing and even less justice. For a period, however, the CRU was fairly active, dismissing indictments for Hynes-era misconduct, including the failure to provide *Brady* material. *E.g.*, *People v. Jabbar Washington*, Kings Co. Index No. 2585/1996 (exculpatory material withheld by Kyle Reeves, the same prosecutor in *People v. Rodriguez*, *infra*); *People v. Sheldon Thomas* (failure to provide *Brady* material relating to misidentification of defendant). Another one of these was *People v. Bladimil Arroyo*, Kings Co. Index No. 7569/2001. A report by the CRU in February 2019 found one of the errors of the "trial prosecutor" was a failure to disclose a detective's notes, "which may have prejudiced the defense." The CRU concluded the "nondisclosures constituted both *Rosario* and *Brady* violations." The unnamed "trial prosecutor" was Timothy Gough.

To establish a *Brady* violation, the Circuit has reasoned that "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

### The City Can Be Held Liable for Conduct of Hynes' Kings County District Attorney's Office

To establish municipal liability, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020). Under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right caused by an official municipal policy or custom. *Bellamy,* 914 F.3d at 756. A plaintiff can establish an official custom or policy by showing any of the following: (1) a formal policy endorsed by the municipality; (2) an action by a decision-maker who possesses final authority to establish municipal policy; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates such that policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Matusick v. Erie County Water Auth.,* 757 F.3d 31, 62 (2d Cir. 2014).

*Monell* liability for constitutional injuries may be found to exist even in the absence of individual liability where the deprivation was caused by a non-party for whom the municipality is bound to answer. *Coleman v. County of Suffolk*, 685 F. Appx. 69, 72 (2d Cir. 2017). For *Monell* purposes, a district attorney is deemed a policymaker for his municipality when he acts as manager of the district attorney's office. *Bellamy v. City of New York*, 914 F.3d 727, 758-59 (2d Cir. 2019).

District courts in the Second Circuit have consistently refused to dismiss *Monell* claims alleging that a county prosecutor's office has sanctioned an unlawful practice, even where the plaintiff cannot point to a formal rule but merely a custom that resulted in the deprivation. *See*, *e.g.*, *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477-478 (E.D.N.Y. 2002). Here, Plaintiff sufficiently states a *Monell* claim for municipal liability based on the violation of his constitutional rights caused by Hynes as a policymaker because Plaintiff alleges a policy, custom, and practice of the KCDA of deliberate indifference towards the constitutional rights of the accused. *Kellner v. City of New York*, 2021 U.S. Dist. LEXIS 177698 (E.D.N.Y. 2021) (denying motion to dismiss *Monell* claim); *see also, Galgano v. Cty. of Putnam*, 2019 U.S. Dist. LEXIS 90965 (S.D.N.Y. 2019) (county responsible for district attorney's conduct under *Monell*).

Lamentably, with regard to Charles Hynes' KCDA, the instances of well-documented cases of *Brady/Giglio* violations resulting in wrongful convictions are too numerous and well-known to recite here. For purposes of this motion, however, we submit the Complaint clearly alleges—and we will prove at trial—that (1) it was both a custom and de facto policy of the KCDA to withhold *Brady/Giglio* materials from criminal defendants; (2) as a result of this policy, the KCDA knowingly failed to provide Plaintiff a trove of *Brady/Giglio* material; (3) this material pertained to five civilian witnesses who provided *the only evidentiary basis* for the KCDA to prove Plaintiff possessed the requisite *mens rea* to be convicted on the charges against him; (4) the hidden material was of such nature and consequence as to have reasonably cast into doubt the credulity of such witnesses on this crucial point; and (5) the unconstitutional failure of the KCDA to provide such *Brady/Giglio* material robbed Plaintiff of a fair trial, resulting in his wrongful incarceration for more than half of his adult life.

**The Hidden Documents Were "Material"**

Defendant appears to concede the essential allegations of the Complaint, but it erroneously argues that the constitutional wrongdoing by the KCDA was "not material" to Plaintiff's harm. Defendant's contention is that the KCDA's failure to disclose a hidden cache of *Brady/Giglio* material—a failure so monumental it impelled Justice Tully to condemn the KCDA's misconduct in two separate decisions —was instead of such modest importance that it was wholly irrelevant to his conviction and incarceration. Defendant's position is in direct conflict with Plaintiff's, therefore raising a genuine issue of fact wholly inappropriate for resolution on a motion under FRCP Rule 12(b)(6).

That said, at the pleading stage, there can be no serious dispute that Plaintiff has adequately made out a *Brady/Giglio* violation. In order to plead a *Brady/Giglio* violation, a plaintiff must show: (1) the evidence at issue was favorable to the plaintiff either because it is exculpatory or impeaching in nature; (2) that such evidence was suppressed by the state; and (3) prejudice to the plaintiff must have ensued. *See Strickler v. Greene*, 527 U.S. 263, 281-282 (1999); *see also Newson v. City of New York*, 2019 U.S. Dist. LEXIS 143835 at 8-9 (E.D.N.Y. 2019) (denying motion to dismiss and holding plaintiff adequately pleaded *Monell* claim against City of New York for failure to provide plaintiff with *Brady* material).

In *Brady v. Maryland*, 373 U.S. 83 (1963) the Supreme Court held that a criminal defendant has a due process right to the prosecutor's disclosure of material that is exculpatory as to either guilt or sentencing. This right is so vital to ensuring that criminal defendants have a fair trial that a prosecutor's suppression of exculpatory material violates due process "irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. It is well established that the criminal defendant's right to exculpatory material includes impeachment material. *See United States v. Bagley*, 473 U.S.

8

667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972). The purpose of the due process right to exculpatory material "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *United States v. Agurs*, 427 U.S. 97, 110 (1976).

Suppressed evidence is considered "material" and prejudice results from suppression "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" as to either guilt or punishment. *Agurs*, at 110. Although the Supreme Court has never definitively held whether *Brady* is based on substantive or procedural due process, it is clear that a procedural due process aspect of the criminal defendant's right to a fair trial. *See Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994); *McCann v.. Mangialardi*, 337 F.3d 782, 787 (7th Cir. 2003). As Judge Tully stated in her decision on the original 440 motion (pg. 11), "defense counsel's cross-examination of every single one of the People's witnesses was limited by the People's failure to disclose…"

The third element of a *Brady* claim, the "materiality" element, requires a showing of a "reasonable probability" that if the favorable material had been disclosed, the result would have been different. *See Strickler v. Greene*, 527 U.S. 263, 281-282 (1999); *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001); *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). "In essence, the materiality prong builds a type of harmless error analysis into the question whether there was a constitutional violation." Martin A. Schwartz, *Sec. 1983 Litig. Claims & Defenses*, at 3.23.

Here, there is no question that the suppressed evidence was material, given that the reliability of each of these witnesses' testimony could have been determinative of plaintiff's guilt or innocence. *See Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 298 (E.D.N.Y. 2022) ("The defense could have used the conversation to impeach not only Ramos's testimony about the plaintiff's role in the murder, but also the testimony of the detectives who allegedly coerced

Ramos") (citing *Giglio*, *supra*, at 154 ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within [*Brady*'s disclosure] rule.").

Given that the witnesses who received favorable treatment, money, housing, etc. from the KCDA were "the main witnesses for the prosecution, then the credibility of those officers is undoubtedly an important issue in the case." *Fraser v. City of New York*, 2021 U.S. Dist. LEXIS 69324 (S.D.N.Y. 2021) (quoting *Gigilio*, *supra*, at 155). In *Fraser v. City of New York*, 2021 U.S. Dist. LEXIS 69324 (S.D.N.Y. 2021), for example, the Court found that the plaintiff's allegation "that the Manhattan DA's office had an obligation to seek out impeachment evidence, but because of office policy failed to do so…is enough to state a claim." *Id.* at 32-33. Here, as in *Fraser* and *Newson,* Plaintiff has alleged in his Complaint that the KCDA had a de facto policy of refusing to provide *Brady/Giglio* material, that they failed in fact to provide him *Brady/Giglio* material in their possession, and that he was harmed thereby. As in these cited cases, the pleadings here are sufficient to survive a Rule 12(b)(6) motion.

"The rule is clear, and none of the *Brady/Giglio* cases has ever suggested that sufficiency of the evidence (or insufficiency) is the touchstone." *Kyles v. Whitley*, 514 U.S. 419, 435 n.8 (1995). Post-conviction courts may not "emphasize[] reasons a juror might disregard new evidence while ignoring reasons she might not." *Wearry v. Cain*, 136 S. Ct. 1002, 1007 (2016). Given that "[m]ateriality is an inherently fact-specific finding," *Litwin v. Blackstone Grp.*, L.P., 634 F.3d 706, 716 (2d Cir. 2011)), "when presented with a Rule 12(b)(6) motion, a complaint may not properly be dismissed…on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Wang v. Cloopen Grp. Holding Ltd.*, No. 21-CV-10610

(JGK), 2023 WL 2534599, at *10 (S.D.N.Y. Mar. 16, 2023) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000)).  As Judge Tully stated (pg. 13) "the cumulative effect of the withheld evidence was sufficient to undermine the jury's ability to assess the credibility of the witnesses."

Plaintiff has adequately pleaded all three elements of a *Brady/Giglio* violation and, as noted above, the materiality of the suppressed evidence cannot be determined on a motion to dismiss. In vacating Plaintiff's conviction, Justice Tully astutely observed, "[t]he People cannot decide for the court which *Brady* material is admissible, and the People cannot decide for the defense which *Brady* material is useful," citing *People v. Andre W.*, 44 N.Y.2d 179, 185 (1978). There can be no dispute that payments to a witness constitute disclosable *Brady/Giglio* material. *See Bellamy v. City of New York*, 914 F.3d 727, 761-762 (2d Cir. 2019). Nor does Defendant dispute such payments were made to and other benefits conferred upon the witnesses. Neither does it even pretend the KCDA disclosed them, instead arguing only that the KCDA's failure to disclose was "not material" to Plaintiff's harm.

### Plaintiff's Claims Cannot Be Adjudicated on a Motion to Dismiss

Even if Defendant's argument on "materiality" were appropriate to resolve upon a Rule 12(b)(6) motion, it must fail since Plaintiff's injury directly and proximately ensued from the KCDA's misconduct. This same finding is, of course, at the root of Plaintiff's successful motion for vacatur in state court, which is why Defendant makes such a point of saying Justice Tully's decisions do not estop them from arguing otherwise on this action.[5] As argued *supra*, the entire

---

[5] While Defendant may be correct on this score as a strict matter of law, it is necessarily swimming against a mighty tide of judicial opinion to contend Plaintiff was unharmed by the KCDA's misconduct. Not only did Justice Tully rule thus twice, her finding aligned with an earlier case involving a different defendant but one of the *same witnesses* and much of the *same* hidden *Brady/Giglio* material. Decision and Order, *People v. Rodriguez*, Kings Co. Index No. 4116/1994, April 22, 2019, at 9 (Mangano, J.) ("[H]ad the material concerning the benefits received by the single

case against Plaintiff at trial turned on the credibility of five civilian witnesses, the only source of meaningful evidence supporting the prosecution's argument that Mr. Charriez acted with the requisite *mens rea* to commit the offense, the only serious issue under contention.[6] Knowing that their case hung by the slender thread of five crack-addicted witnesses, the KCDA—consistent with a de facto policy of subterfuge—sought to convict Mr. Charriez with a three-fold strategy.

First, the KCDA ensured the compliance of their witnesses with handouts on an eye-popping scale. Second, the KCDA then deprived the defense of any meaningful cross-examination of those witnesses by hiding all evidence of these blandishments, thumbing their nose at their sworn constitutional obligations. Third, knowing the defense was flying blind, trial prosecutor Timothy Gough had the temerity to take the additional steps of both elicited false testimony from his witnesses that they had received "no promises" for their testimony and on summation going so far as to vouch actively for the purity of their motives. Thus, deprived of all ammunition that would have allowed him justly to fashion an argument that the witnesses against him shaped their testimony to conform with the requirements of their paymaster, Mr. Charriez was convicted and thereupon served a quarter-century in prison. As Judge Tully stated (pg. 13) "rather than correcting misleading statements, the People took advantage of Bailey's and McCreary's misleading representations to the jury. In summations, the People vouched for the witnesses' credibility, suggested that the witnesses had no motives to falsify testimony, and argued that the witnesses

---

witness from the Kings County District Attorney's Office been timely disclosed, *there is no question that there would have existed a reasonable probability that the verdict would have been different.*") (emphasis added). Justice Mangano's ruling was unanimously upheld on appeal. 186 AD3d 1724 (2d Dept. 2020) ("[T]he People's failure to disclose this information to the defense violated defendant's constitutional right to due process.").

[6] Mr. Charriez was charged in the indictment with murder under both an intentional and a depraved indifference theory, and it was permissible at the time to present the charges conjunctively to a jury. As the two theories are logically inconsistent, however, the practice is now forbidden by law and the charges must be presented in the alternative. *See People v. Dubarry*, 25 NY3d 161 (2015).

were merely testifying because they were friends with Byrd, and thereby relayed that the witnesses had no deals with the KCDA that would benefit them."

There can be no factual dispute that the KCDA provided tens of thousands of dollars in benefits to these five witnesses, as Defendant appears to concede.[7] By focusing on "materiality," however, Defendant makes the admission by silence. Regrettably, this is the same coy practice followed by the KCDA in state court; whereas the KCDA perforce admitted the provision of benefits to their five witnesses in the face of a mountain of proof, they never outright confessed their failure to disclose it.[8]

Justice Tully did not require the KCDA's mea culpa, however, to vacate Plaintiff's conviction, finding:

> The People's failure to disclose the monies paid, promises made, and benefits conferred upon every single witness who testified against the Defendant, failure to correct misstatements, and conduct in bolstering the credibility and misstatements of the witnesses, *constituted a denial of the Defendant's rights and a pattern of breach of the People's constitutional duty*.[9]

Therefore, notwithstanding the KCDA's tactical refusal to concede their manifest failure, events proved the negative to the satisfaction of Justice Tully.

---

[7] They concede as they must. As Justice Tully ruled, "The People admit to the monies paid to each of the witnesses for hotel stays, meals, housing, furniture, and personal items. Moreover, [Mr. Charriez]'s claims are substantiated by *unquestionable documentary proof*." Decision and Order, *People v. Charriez*, Kings Co. Index No. 1778/1997, Feb. 25, 2021 (Tully, J.), p. 14 (emphasis added).

[8] *Id. See also* Affirmation of ADA Ann Bordley in Opposition to Defendant's Motion to Vacate, *People v. Louis Charriez*, Kings Co Index No. 1778/1997, Jan. 24, 2020, passim, admitting generally to the provision of benefits albeit *without* admitting the failure to disclose. A supporting affirmation from the trial prosecutor Timothy Gough avers only that he disclosed the relocation of two witness without "detail" or "how much money the District Attorney's Office was spending," but is otherwise silent on the essential issue whether he did or did not advise Plaintiff of the massive benefits bestowed upon all five civilian witnesses. Affirmation of Timothy Gough, *People v. Charriez*, Kings Co. Index No. 1778/1997, Jan. 22, 2020, pp. 2-3. Mr. Charriez's moving papers below, on the other hand, were supported by affidavits of his counsel denying receipt of any *Brady* material before trial.

[9] Decision and Order, *People v. Charriez*, Kings Co. Index No. 1778/1997, Feb. 25, 2021, p. 14 (emphasis added). Months later, when the KCDA moved with remarkable hubris to renew their opposition, citing "newly-discovered evidence" that they had made a modest *Brady/Giglio* disclosure pertaining to just two witnesses, Justice Tully denied their motion out of hand, finding "[n]othing in the People's motion to renew suggests that they made full *Brady* disclosures" as required by the Constitution. Decision and Order, *People v. Charriez*, Kings Co. Index No. 1778/1997, Mar. 1, 2022, p. 14.

Defendant's argument that this hidden horde of cross-examination material would somehow not have been "material" to Plaintiff's has been made—and lost repeatedly—in hard-fought state court litigation below. After giving due consideration to the KCDA's identical "materiality" argument, Justice Tully found that there existed a "reasonable probability" that Plaintiff's trial outcome would have been different had the KCDA not shirked their constitutional duty to disclose.[10]

Seemingly, the KCDA itself concedes the materiality of this impeachment evidence, fearing to re-try Mr. Charriez now that he is in possession of it. Upon moving to dismiss the indictment against Mr. Charriez, the KCDA placed on the record its reasoning, which is so simple as to require no explanation: "We are unable to say that we would obtain a successful prosecution if we were to proceed."[11]

### The Complaint States a Claim for Municipal Liability

Defendant's second argument that the complaint fails to state a cause of action for deliberate indifference because "most of the cited state cases [presumably in Plaintiff's complaint] do not involve a failure to disclose *Brady*/impeachment materials as is the issue here. With respect to the few cases which involve a failure to disclose *Brady*/impeachment material, the various Courts found that the materials were insignificant to have had an effect on the jury's decision" (Defendant's 6/2/23 letter at p.2). Plaintiff respectfully submits that it would be inappropriate to dismiss Plaintiff's complaint because not all of the 77 reported decisions that are appended to the

---

[10] In fact, the court so ruled twice. Decision and Order, *People v. Charriez*, Kings Co. Index No. 1778/1997, Feb. 25, 2021, p. 15; Decision and Order, *People v. Charriez*, Kings Co. Index No. 1778/1997, March 1, 2022, p. 14. And, as mentioned, so concluded Justice Mangano, who considered the identical material respecting one of the witnesses against Plaintiff. *See* Decision and Order, *People v. Rodriguez*, Kings Co. Index No. 4116/1994, April 22, 2019, *affd.*, 186 AD3d 1724 (2d Dept. 2020).

[11] Calendar Call, *People v. Charriez*, Kings Co. Index No. 1778/1997, Jan. 27, 2023, pp. 2-3 (record of ADA Joseph Bianco). As the KCDA was then ready for trial with all but one of the five civilian witnesses available to testify, one having died, the only colorable basis for doubting their success at re-trial was the specter of cross-examination with the very *Brady/Giglio* material Defendant now urges your Honor to find was "not material."

Complaint resulted in an acquittal. The cases cited in Plaintiff's complaint established that the KCDA had a custom and practice of suppressing exculpatory evidence or evidence that could be used to impeach the prosecution's witnesses.

Defendant's contention that the Second Circuit's decision in *Greene v. City of N.Y.*, 742 F. App'x 532, 536 (2d Cir. 2018) establishes that the pleadings are deficient on their face should be rejected. In *Greene v. City of New York*, 742 F. App'x 532, 534 (2d Cir. 2018), the plaintiff's 1985 murder conviction was vacated in 2006 on the basis of ineffective assistance of counsel, not due to the willful and deliberate suppression of evidence. Moreover, the plaintiff's complaint in *Greene* was not dismissed at the pleading stage but on summary judgment, after discovery was completed.

In addition, the plaintiff's complaint was dismissed in *Greene* because "Greene's only evidence that prosecutors in the KCDA committed other violations of their disclosure obligations is a list of 36 court decisions, issued over a 22-year span, finding such violations. However, all but two of those decisions were issued after Greene's trial." *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018). While the evidence that Greene submitted in opposition to the defendant's motion for summary judgment was insufficient because the evidence of the KCDA's *Brady* violations post-dated defendant's conviction.

However, it should be noted that the evidence that the plaintiff submitted in response to the defendant's motion for summary judgment in *Greene*, albeit submitted under seal, is relevant to this matter. While the veracity of the complaint's allegations is the primary focus when moving to dismiss under FRCP § 12(b)(6), the Court can consider information subject to judicial notice and matters of public record. *See* Federal Civil Rules Handbook, 2021 ed. (citing *Crowder v. Delta Air Lines, Inc.*, 963 F.3d 1197, 1202 (11th Cir. 2020); *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020)). *See generally Schmidt v. Skolas*, 770 F.3d 241, 249–50 (3d Cir.

15

2014) (explaining rationale for exception); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In *Greene*, the plaintiff submitted numerous documents produced by the KCDA which could very well support the complaint's theories of liability. Such evidence included, but was not limited to a memo from the Kings County District Attorney' regarding ADA Training (*Greene v. City of New York* 1:08-cv-00243, ECF Doc. 274-46), KCDA Memo Summarizing Trial Reversals for ADA Misconduct (ECF Doc. 274-52); KCDA Memo re: Appellate Decisions Citing ADA Misconduct (ECF Doc. 274-53); KCDA Memo re: ADAs Failing to Correct Inaccurate or False Witness Testimony (ECF Doc. 274-53); KCDA Memo re: Batson Violations (ECF Doc. 274-55) and the expert report and testimony of plaintiff's expert witness opining about KCDA's *Monell* violations.

All of these documents were considered irrelevant to the *Monell* claims in *Greene v. City of New York*, because they involved events after Greene's conviction and were not relevant to his case. Conversely, given that the instant Plaintiff's conviction occurred in 1997, they *are* relevant to this case. As these materials were all submitted under seal in *Greene*, but are on file with this Court, Plaintiff respectfully submits that this matter must proceed past the pleadings stage, given that there is a plethora of information on file with this Court and in the possession of KCDA which are very relevant to this case.

Having thus adequately stated a claim for liability, we respectfully ask that Defendant's motion under FRCP Rule 12(b)(6) be denied.

16

Respectfully submitted,

LAW OFFICES OF ADAM J. ROTH, P.C.
/s/Adam J. Roth, Esq.
112 West 34th Street, 18th Floor
New York, New York 10120
Tel: 212-922-3741
ajr@loajr.com

LAW OFFICES OF ROBERT C. REULAND, P.C.
/s/Robert C. Reuland, Esq.
26 Court Street, Suite 1400
Brooklyn, New York 11242
Tel: 718-300-0626
robert@reulandlaw.com

AIDALA, BERTUNA & KAMINS, P.C.
/s/Arthur L. Aidala, Esq.
546 Fifth Avenue
New York, New York 10036
Tel: 212-486-0011
aidalaesq@aidalalaw.com

17